# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 25-MJ-239 (MAU)** |
| | : | |
| **JAMES ADRIAN BREWER,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant James Adrian BREWER ("BREWER") be detained pending trial pursuant to 18 U.S.C.§ 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## RELEVANT FACTS AND PROCEDURAL POSTURE

As reported in Metropolitan Police Department ("MPD") Criminal Case Number ("CCN") 25-134-631, on September 3, 2025, at approximately 1:01p.m., MPD received a call for service for a firearm that had been found at The Goodwill Excel Center Adult Charter School, located at 1776 G Street, NW, Washington, D.C. 20006.

MPD officers responded to the school and met with Witness-1, the school administrator, who turned over a firearm to MPD. The firearm was found to be a Glock, Model 19, 9mm pistol, bearing serial number BBKD640. The Glock 19 pistol was fitted with a Glock, switch-style, Machinegun Conversion Device ("MCD") attached to the rear end of the firearm. A MCD is a device that can convert a firearm from semi-automatic fire into a fully automatic machinegun. The Glock 19

machinegun was loaded with one round in the chamber and 23 rounds in a 24-round, extended capacity magazine. Additionally, a query of the Glock 19 machinegun's serial number revealed the firearm was stolen out of Georgia in 2016.



MPD Detectives then responded to the school to interview Witness-1. Witness-1 stated he was working at the school when he observed an individual, later identified as Defendant James Adrian BREWER, with a sagging waistband and holding his waist while walking. Based on these observations, Witness-1 believed BREWER was armed. Witness-1 stopped BREWER near the front entrance staircase and escorted BREWER to another room. This encounter was captured on Closed Circuit Television ("CCTV") security cameras.



Once in another room, Witness-1 asked BREWER to lift his shirt and show his waistband. BREWER complied and Witness-1 observed a firearm in BREWER's front waistband. Witness-1 had BREWER retrieve the firearm from his own waistband and place the firearm into BREWER's bag. Witness-1 then escorted BREWER to Witness-1's office.

Once in the office, Witness-1 used a towel to retrieve the firearm from the bag. The firearm was placed in a lockbox pending notification to MPD. Additionally, Witness-1 discovered one loose round of .40 caliber ammunition inside BREWER's bag. Witness-1 informed BREWER that he would be suspended from the school and faced the possibility of expulsion. Witness-1 sent BREWER on his way and notified MPD.

Witness-1 identified BREWER to MPD Detectives as the individual who was in possession of the firearm. An MPD Detective located a photograph of BREWER in MPD's Report Management System ("RMS"). The Detective showed Witness-1 BREWER's photograph, at which time, Witness-1 positively identified BREWER as the individual from whom he retrieved the firearm.

The following day, September 4, 2025, an MPD Detective spoke with BREWER via telephone, during which conversation BREWER stated he wished to self-surrender and, at approximately 10:00p.m., BREWER was taken into custody without incident and transported to MPD's Second District ("2D") for an interview.

MPD Detectives conducted a custodial interview of BREWER, at which time BREWER waived his <u>Miranda</u> rights and agreed to speak with the Detectives. BREWER admitted to having a firearm in his waistband and surrendering it to Witness-1. BREWER stated that he acquired the firearm in Washington, D.C., and that it had an MCD on it when he obtained it. BREWER stated that the individual who gave him the firearm also explained what the MCD was, saying something to the effect of "This side is semi, this side makes it shoot fast". BREWER stated he knew MCDs could be purchased online.

When asked if BREWER knew what an MCD did, BREWER stated it made the firearm fun and that it makes the firearm shoot fast. Additionally, BREWER stated that he watched YouTube videos that explained an MCD's function. During the interview, BREWER declined to voluntarily provide a buccal swab, stating "I already said it's mine".

On September 5, 2025, BREWER was charged with Carrying a Pistol Without a License and Possession of a Machinegun in D.C. Superior Court Case Number 2025 CF2 10924. That same day, BREWER was ordered preventatively detained. On September 8, 2025, BREWER was released on GPS monitoring and has remained on release since that date. On September 24, 2025, BREWER was charged with Simple Assault (domestic) in 2025 DVM 1470. BREWER was released in that case and ordered to stay away from the victim.

On October 7, 2025, BREWER was charged in this court by Criminal Complaint with Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) and Unlawful Possession of a Firearm in a School Zone, in violation of 18 U.S.C. § 922(q)(2)(A). On October 15, 2025, ATF agents arrested BREWER at his grandmother's residence based on the Criminal Complaint and corresponding Arrest Warrant. BREWER's grandmother stated that BREWER was a guest at her home and gave ATF agents her consent to search the bedroom he was staying in.

Inside the bedroom, ATF agents found a black backpack which contained 23 rounds of ammunition – including six loose rounds of handgun ammunition, one loose round of .223 caliber rifle ammunition, and a box containing 16 rounds of .223 caliber rifle ammunition.  Also inside the backpack was a charging handle – which is a necessary part for an AR-15 style rifle, and functions to load ammunition from the magazine into chamber to prepare the rifle to fire.





## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

**1.    The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. 3142(f)(1)(E), because BREWER is charged with violating 18 U.S.C. §§ 922(o) and 922(q)(2)(A), both of which are felony firearms offenses.

**2.    The Bail Reform Act Factors All Favor Detention**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.    The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh in favor of pretrial detention. BREWER brought a loaded machinegun into a high school, carrying it around in his waistband until

he was caught by a school official. BREWER then proudly admitted that the firearm was his and that he knew it was a machinegun.  The brazenness with which BREWER carried out this incredibly dangerous conduct clearly demonstrates the threat that he poses to the community.

      **B.**     **The Weight of the Evidence Against BREWER Favors Pretrial Detention**

The evidence of both BREWER's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention.  As noted above, BREWER was literally caught red-handed and promptly admitted his guilt to MPD Detectives.

      **C.**     **BREWER's History and Characteristics Weigh in Favor of Detention**

BREWER's history and characteristics also weigh in favor of detention, despite his lack of prior convictions.  Notwithstanding that he brought a loaded machinegun into a high school, BREWER was granted pretrial release in Superior Court. BREWER rewarded he Court's leniency by being promptly being re-arrested and charged with domestic assault – a fact which was somehow insucfficient to revoke his release conditions.  Not to be outdone, BREWER was in constructive possession of firearms parts and ammunition when he was arrested by ATF agents on October 15. BREWER's conduct on pretrial release todate demonstrates that he cannot be trusted to follow whatever release conditions the Court might otherwise consider setting.

      **D.**     **The Danger to the Community Created by BREWER' Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified

even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

BREWER poses an obvious and articulable threat to the community. Specifically, the threat posed by BREWER is that, if he is released, he will once again choose to ignore court orders and supervision requirements and continue to commit domestic assault and possess firearms, firearms parts, or ammunition. Even if this Court were to find that BREWER is not a risk of committing another crime of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

BREWER is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). All four of the Bail Reform Act factors weigh in favor of pretrial detention, and BREWER poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/  James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov